NOT DESIGNATED FOR PUBLICATION

No. 113,154

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of:

ERIC W. VAUGHAN,
*Appellee,*

and

MELISSA J. VAUGHAN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVEN M.P. O'GRADY, judge. Opinion filed November 13, 2015. Affirmed in part, reversed in part, and remanded with directions.

*Jill C. Jackoboice*, of Jackoboice & Fisher, LLC, of Kansas City, Missouri, for appellant.

*Robert S. Caldwell*, of Caldwell & Moll, L.C., of Overland Park, and *Susan Saper Galamba*, of Law Office of Susan Saper Galamba, L.C., of Overland Park, for appellee.

Before ATCHESON, P.J., SCHROEDER, J., and HEBERT, S.J.

*Per Curiam*:  Eric W. Vaughan and Melissa J. Vaughan were divorced on October 9, 2014, and on December 11, 2014, the district court entered an amended memorandum decision and decree of divorce. Melissa appeals from the orders regarding attorney fees and division of marital assets.

Melissa first argues that the district court erred by offsetting her award of attorney fees by an amount attributable to Eric's expert witness fees. We agree the district court

1

erred in this regard, and we vacate that portion of the judgment and remand to the district court with directions to reinstate the full amount of attorney fees awarded to Melissa without such offset.

Melissa also claims the district court erred by treating the parties post-evaluation date contributions differently and the district court abused its discretion by making a 50/50 division of the marital assets. We find no reversible error or abuse of discretion in the valuation or division of marital assets, and we affirm the judgment of the district court.

*Factual and Procedural Background*

Eric and Melissa were married on February 14, 1998. Eric and Melissa have one minor son who was born in 1998. Prior to the marriage, Eric joined the military in order to receive the G.I. Bill benefits to help him finance his education. During the marriage, Eric received his bachelor's degree in biology, subsequently attended medical school, and participated in the Health Professions Scholarship Program. Under this program, the military paid for his books, tuition, fees, and provided a stipend. In addition to military assistance, Eric took out student loans to help finance his education; these loans were paid off during the marriage. While Eric worked toward his degrees, Melissa also completed her associate's degree in order to become a registered nurse. More recently during the marriage, Melissa received her bachelor's of science degree in nursing. Eric is an emergency medicine physician with a current annual income of $298,729.78. Melissa, although unemployed for a few years, obtained a position in her field in 2014; her current annual income is $73,320. In addition to receiving their various degrees during the marriage, the couple also acquired a residential home located in Shawnee, along with various retirement accounts and three vehicles.

On January 4, 2013, Eric filed a petition for divorce. Melissa filed her answer and counter-petition on January 29, 2013. The district court filed temporary orders on June 13, 2013. Eric and Melissa agreed to matters regarding child custody and parenting time. The district court ordered Eric to pay monthly child support in the amount of $2,294 and monthly spousal maintenance in the amount of $4,835. Melissa was granted permission to continue to reside in the marital residence, and she was ordered to make payments related to the home.

The matter was tried to the court over 2 separate days. Many of the issues were bitterly contested by both parties. At the hearing, the district court heard testimony regarding Eric's military retirement, the division of the marital residence, Melissa's ability to work, Melissa's sacrifices and support, Eric's income, and attorney fees. The district court filed its decision and the divorce decree on October 9, 2014. The memorandum decision was amended on December 11, 2014. In its detailed 16-page decision, the district court considered statutory factors before dividing the property. The district court awarded attorney fees to Melissa but offset that amount by the cost of Eric's expert witness fees. The district court also awarded the marital residence to Eric as of January 1, 2015. Melissa remained responsible for the mortgage, utilities, insurance, and other related expenses until that date. Melissa timely appeals the district court's division of the marital assets.

*The district court erred by awarding Eric judgment for expert witness fees as an offset to Melissa's attorney fee award.*

The record clearly establishes this divorce was an extenuated and contentious matter. The district court determined the total attorney fees exceeded $115,000 and noted, "both parties spent considerable time trying to prove that the other was responsible for increased fees or unreasonably refused to settle." The district court ultimately granted Melissa judgment for attorney fees in the amount of $10,000. But the court also

determined that Eric had expended $7,411.50 in fees for an expert witness regarding military retirement issues. The court was of the mind that Melissa's refusal of an offer to settle on this issue had generated the necessity for the expert witness and offset the expert witness fees against her attorney fee award, leaving a balance of only $2,588.50 due from Eric.

Melissa argues that the district court had no statutory authority to award expert witness fees and asks this court to restore the entire attorney fee judgment of $10,000 in her favor without offset.

*Standard of Review*

The issue of the district court's authority to award attorney fees is a question of law over which appellate review is unlimited. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013). A court may not award attorney fees absent statutory authority or an agreement by the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013).

Furthermore, this case involves a matter of statutory interpretation over which this court has unlimited review. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014). The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind the clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Cady*, 298 Kan. at 738-39.

*The Statutes*

Our Supreme Court has held: "The fee of an expert witness may not be charged to the losing party unless specifically authorized by statute." *Johnson v. Westhoff Sand Co., Inc.*, 281 Kan. 930, Syl. ¶ 13, 135 P.3d 1127 (2006). Our Supreme Court also noted: "The term 'costs' ordinarily means the fees and charges of the court—filing fees, fees for service of process and the like." *Divine v. Groshong*, 235 Kan. 127, 141, 679 P.2d 700 (1984).

Several statutes are variously cited in the briefs, and the district court's rulings purporting to support the award of "expert witness fees."

### K.S.A. 2014 Supp. 23-2216

Eric first argues the district court had authority to award expert witness fees under K.S.A. 2014 Supp. 23-2216, which pertains to assessment of costs under the Kansas Parentage Act, K.S.A. 2014 Supp. 23-2201 *et seq.* This argument is unpersuasive.

The district court's citation to this statute relies upon a misstatement of the statute by taking the words "and other expenses of the action" out of context. This results in a misconstruction of the letter and purpose of K.S.A. 2014 Supp. 23-2216, by ignoring the fact that the statutorily allowed costs pertain only to parentage claims. Pointedly, K.S.A. 2014 Supp. 23-2216(d) specifically refers to fees generated for "an expert witness qualified to perform genetic testing" which may *not* be taxed as costs. There is no other reference to "expert witness fees."

Clearly, K.S.A. 2014 Supp. 23-2216 is inapplicable and does not provide pertinent support for an award of expert witness fees in the context of this case.

*K.S.A. 2014 Supp. 23-2715*

Eric next claims that the award of expert witness fees is allowable under K.S.A. 2014 Supp. 23-2715. The district court alluded to this statute in its order regarding Melissa's motion to alter or amend the initial judgment.

It is correct that K.S.A. 2014 Supp. 23-2715 supports an order of attorney fees and costs in an action under K.S.A. 23-2701 *et seq.*, the general statute dealing with dissolution of marriage. However, the statute does not specifically refer to "expert witness fees" as recoverable costs. Generally, when the legislature does not make any specific provision for recovery under a statute, this court should refrain from reading something into the statute that is not readily found in its words. *Cady,* 298 Kan. at 738-39. The legislature has demonstrated in the context of other statutes that it is capable of specifically mentioning recovery of expert witness fees when that is its intention. *Cf.* K.S.A. 2014 Supp. 23-2216(d); see also K.S.A. 16-1305.

K.S.A. 2014 Supp. 23-2715 does not support an award of expert witness fees in the context of this case.

*K.S.A. 2014 Supp. 60-2002(b)*

The district court also refers to K.S.A. 2014 Supp. 60-2002(b) in its memorandum decision as justification for the award of expert witness fees to offset the award of attorney fees. This statute provides for assessment of costs associated with rejection of an offer of judgment. The district court noted "that Melissa's recovery vis-à-vis the military retirement was no better than the offer of judgment." This suggestion again is not persuasive in supporting the award of expert witness fees. Counsel was unable to cite any examples of an offer of judgment being employed and enforced in a domestic relations action. Further, the offer made by Eric related only to the single issue of military

6

retirement and did not propose resolution of the entire case. No authority was cited where an offer of judgment was enforced in piecemeal fashion. In any event, Eric acknowledges that K.S.A. 2014 Supp. 60-2003, which addresses the items allowable as costs, does not specifically include expert witness fees. Again, K.S.A. 2014 Supp. 60-2002 and K.S.A. 2014 Supp. 60-2003 fail to provide pertinent support for the award of expert witness fees in this case.

*Attorney Fees Are Authorized by Statute*

K.S.A. 2014 Supp. 23-2715 specifically authorizes a district court to make an award of attorney fees in an action for dissolution of marriage. The trial court is vested with wide discretion to determine the amount and the recipient of an award of attorney fees. When reviewing an award of attorney fees, the appellate court does not reweigh the testimony or the evidence presented or reassess the credibility of the witnesses. An award of attorney fees will not be set aside on appeal when supported by substantial competent evidence. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 973, 255 P.3d 34 (2011).

In deciding the reasonableness of an attorney fee, the eight factors set forth in Supreme Court Rule 226, Kansas Rules of Professional Conduct, Rule 1.5(a) (2014 Kan. Ct. R. Annot. 515) should be considered. The district court itself is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in determining their values. An appellate court is also an expert on the reasonableness of attorney fees. An appellate court, however, does not substitute its judgment for that of the district court on the amount of the attorney fee award unless in the interest of justice the appellate court disagrees with the district court. *Johnson*, 281 Kan. at 940.

The district court determined "that it is fair, just, and equitable and that justice and equity require that Eric contribute to Melissa's attorney fees and expenses." Before offsetting the judgment, the district court awarded Melissa $10,000. The district court

thoroughly addressed the issue of attorney fees. In its analysis, the district court also applied the factors as set forth in Supreme Court Rule 1.5a. The district court had the authority to award attorney fees, and nothing in the record indicates the district court abused its discretion by awarding Melissa $10,000 in attorney fees. The district court had no authority to offset this amount by the amount of Eric's expert witness fees. The issue regarding expert witness fees is reversed and remanded with the instruction to grant Melissa the original judgment for $10,000 in attorney fees.

*The district court did not abuse its discretion regarding division of marital assets.*

Melissa raises two arguments regarding the district court's division of the marital property. She first argues that the district court erred by treating her post-evaluation date contributions differently than those made by Eric. Second, she asserts the district court erred by making a 50/50 division of the marital assets.

*Standard of Review*

Both issues are subject to the same standard of review. A district court's division of property in a divorce action is governed by K.S.A. 2014 Supp. 23-2801 *et seq*. Appellate review is for abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). A judicial action constitutes an abuse of discretion if the action is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

When dividing property, there are statutory factors the district court must consider. These factors are set forth in K.S.A. 2014 Supp. 23-2802(c), which provides:

"In making the division of property the court shall consider: (1) the age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property."

*The Post-evaluation Date Contributions*

It is uncontested that the parties stipulated to a property evaluation date of March 31, 2013. Melissa remained in the marital residence and was required to make mortgage payments and real estate tax payments from April 1, 2013, through January 1, 2015. During this period, Eric made payments for maintenance and child support. Eric also made significant contributions to his retirement accounts. Melissa claims a disparity of treatment because, although Eric was allowed to keep all the money he contributed, she loses the money she contributed because she does not get to keep the house.

Eric and Melissa agreed the marital residence was worth less than the mortgage owed. Eric offered to take the property with a zero value. Melissa requested to take the property with a negative value of approximately $23,933. The district court considered this information in addition to the following: Melissa wished to stay in the home so their son could continue to attend his current high school; Melissa asked to keep the home, but if she was not able to refinance the mortgage prior to their son's graduation, she asked that the home be sold; Eric did not believe the house could be sold due to the mortgage balance; and he did not believe Melissa could refinance the home within a reasonable period of time.

The district court found Eric's arguments more persuasive. The district court was "concerned for Melissa's financial stability with such a large house payment." The district

9

court noted Eric's proposal to take the property at a zero value maximized the value of the marital estate. The district court held:

> "The residence is set aside to Eric effective January 1, 2015. Melissa will be responsible for the mortgage, utilities, insurance and similar expenses for the home until that date. Eric shall refinance the home or otherwise obtain Melissa's release from responsibility on the mortgage by February 1, 2015. Should he fail to do so the house will be sold and Eric will be responsible for any mortgage and/or escrow deficiency."

It is clear the district court carefully applied the factors set forth under K.S.A. 2014 Supp. 23-2802(c). The district court also considered the testimony, the notebooks of exhibits, and other court documents. There is nothing in the record to indicate the district court abused its discretion when it awarded the marital home to Eric.

*The 50/50 Division of Marital Assets*

Melissa asserts the district court erred by failing to award her a minimum of 70% of the marital assets. She raises several points in support of her argument. Although she acknowledges that Kansas does not recognize professional degrees as property subject to division, she claims the district court still failed to consider Eric's advanced degree and should have given greater weight to Melissa's sacrifices and support. She further contends the district court erred by failing to consider Eric's "dissipation of, or unilateral decision to 'zero out' his military retirement." Melissa claims the district court erred by considering spousal maintenance as a factor in determining the property division. Melissa argues that when the district court awarded a 50/50 division, it "failed to consider the circumstances leading to and resulting from the vast income disparity of the parties, and failed to properly consider and apply K.S.A. 23-2802(c) to the facts of this case."

10

In an unpublished but persuasive opinion, this court recently observed:

"District courts are vested with broad discretion in adjusting the property rights and financial affairs of parties involved in a divorce action. [*Wherrell*, 274 Kan. at 986]. The district court must make 'a just and reasonable division of [the marital] property.' K.S.A. 2014 Supp. 23-2802(c). Because Kansas is an equitable division state, divorce courts are not required to make an equal split of all property acquired during the marriage. *In re Marriage of Rodriguez,* 266 Kan. 347, 352-53, 969 P.2d 880 (1998). In fact, a district court '"has discretion to award marital property entirely to one party so long as the overall division is fair." [Citation omitted.]' 266 Kan. at 353. In other words, although the ultimate division of property must be just and reasonable, it need not be equal. *In re Marriage of Vandenberg,* 43 Kan. App. 2d [697, ]715[, 229 P.3d 1187 (2010)]." *In re Marriage of Marcus and Ording*, No. 111,811, 2015 WL 3632435, at *12 (Kan. App. 2015) (unpublished opinion).

A review of the record and the district court's detailed decree indicates the court clearly and carefully considered all the requisite factors in reaching its decisions.

*Present and Future Earnings*

As anticipated in a contentious divorce proceeding, the record indicates that the parties had substantially different and somewhat self-serving perceptions and recollections of their respective contributions to the family finances and accomplishment of overall family goals during the marriage. Both benefitted from advanced education during the marriage.

The district court thoroughly addressed both Melissa's and Eric's future earning capacity. It also discussed Eric's ability to pay, Melissa's need, the parties overall financial conditions, the length of marriage, and the amount of support paid. K.S.A. 2014 Supp. 23-2802(c)(4) provides the district court must consider present and future earning

11

capacities, which necessarily implicates consideration of both Eric's professional degree as well as Melissa's advanced degree in her field.

*Military Retirement*

A major bone of contention in the district court arose from Eric's military service and potential retirement income. Eric had engaged in some sort of military service since 1992, prior to the marriage. After the marriage, Melissa participated in decisions regarding options for service and where Eric would be stationed, including a posting in Germany which offered the family an opportunity for travel throughout Europe.

At the time Eric filed the petition for divorce, he was a reservist in the United States Air Force. He testified he was in the process of requesting an honorable discharge. At the time of the hearing, there was no expectation that Eric was going to receive any military retirement because he had only 13 years out of a total 20 "good years" required for retirement. According to Eric, "[I]t was always a balance as to whether the military was the right decision for the family and for myself, for everyone involved. So it's always been a constant discussion whether it is the right decision to be in the military." He ultimately decided to leave the military because it "was significantly cutting into what [time he] had available for [his] son, and [he] was able to spend more time with him after [he] left the military."

Pursuant to K.S.A. 2014 Supp. 23-2802(c)(8), the district court addressed Melissa's argument that Eric was somehow dissipating marital assets by refusing to remain in the military long enough to accumulate the retirement benefits. The court found her argument unpersuasive and declined to require Eric to remain in the military and put himself in harm's way just so Melissa could get a retirement benefit. The court did accept the parties' agreement that the court retain jurisdiction over the military retirement issue

12

and providing that, in the event that Eric ever qualified for military retirement benefits, the district court would divide that asset between the parties.

The court clearly considered the relevant statutory factor in reaching a decision on this issue.

*Spousal Maintenance*

In its written decision, the district court set forth a detailed analysis of the spousal maintenance issue, considering the parties respective earning capacities, Melissa's need, Eric's ability to pay, and the parties' overall financial condition. The court ordered Eric to pay Melissa maintenance in the amount of $3,758 per month for a total of 44 months beginning June 2014. Melissa incorrectly argues the district court erred by considering her spousal maintenance award in the division of property. K.S.A. 2014 Supp. 23-2802(c)(7) provides the district court must consider "the allowance of maintenance or lack thereof." Here, the district court properly addressed its award of spousal maintenance to Melissa.

*Summary*

The parties presented the district court with their arguments and supporting evidence. The district court rendered a detailed decision, explaining its analysis and conclusions based on the facts, figures, and testimony. The district court, in these several instances, was more persuaded by Eric's evidence and arguments than by Melissa's. Such is the nature of litigation. Considering the emotional investment of the parties in this case, it is understandable that Melissa may feel that the decision is unfair and that reasonable persons might agree with her position, but that is not the test here. The test is whether the decision of the district court is so egregious that no reasonable person could agree with the court's resolution of the issues. The district court's rationale and factual basis for its

13

decision to divide the marital property on a 50/50 basis is understandable and is in compliance with K.S.A. 2014 Supp. 23-2802. There is nothing in the record to indicate the district court abused its discretion regarding the valuation and division of the marital assets, and the judgment is affirmed.

Affirmed in part, reversed in part, and remanded with instructions.